324          STATE v. RIDDELL.

[No. 4884. Decided December 5, 1903.]

THE STATE OF WASHINGTON, *Respondent,* v. J. D. RID-
DELL, *Appellant.*[1]

CRIMINAL LAW—INFORMATION—PROSECUTING ATTORNEY—DEPUTY.
An information subscribed by a deputy prosecuting attorney is
sufficient since, Bal. Code, § 6832, requiring informations to be
subscribed by the prosecuting attorney, must be read in connec-
tion with the later act, Bal. Code, § 4756, providing that deputies
shall have the same powers in all respects as their principals.

FALSE PRETENSES—ATTEMPTS—INFORMATION—SUFFICIENCY—PRE-
TENDING OWNERSHIP OF CERTIFICATE. An information charging an
attempt to secure money from a bank on a duly endorsed certifi-
cate of deposit by falsely pretending ownership thereof, which if
successful would have defrauded the payee of the amount of the
certificate, states an offence under Bal. Code, § 7165, defining false
pretenses, and Bal. Code, § 7437, making attempts to commit any
crime punishable, and whether the attempt was successful or not
is immaterial.

SAME—FAILING TO ALLEGE POSSESSION. Such an information is
not objectionable for failing to allege that the accused was in
possession of the certificate, where it is alleged that he falsely pre-
tended to be its owner and bona fide purchaser for value.

SAME—EVIDENCE—SUFFICIENCY TO SUSTAIN CONVICTION FOR AT-
TEMPT TO DEFRAUD BY FALSE PRETENSES. There is sufficient evi-
dence to sustain a conviction for attempting to obtain money by
false pretenses, when it appears that the defendant early in the
morning presented for payment at a bank a certificate of deposit
that had on the same day been fraudulently secured by others in
a bunco game, and which was duly endorsed by the payee, who
was still the owner, that defendant claimed to be the owner for
value at the time it was presented, but afterwards made a written
statement disclaiming any interest in it, and made other contra-
dictory statements concerning the description of the man from
whom he claimed to have obtained it, bearing upon defendants
fraudulent intent and guilty knowledge; and the presentation at
the bank under claim of ownership was sufficient evidence of a
demand for payment.

[1]Reported in 74 Pac. 477.

SAME—EVIDENCE OF ACTS OF OTHERS WHEN DEFENDANT WAS NOT PRESENT. In such a case, evidence of the occurrences whereby the owner was unlawfully deprived of the certificate of deposit is admissible to show title, although it was not claimed that the defendant was connected with the bunco performance itself; and the short time that had elapsed was a circumstance for the jury.

SAME—FALSE REPRESENTATIONS OF DEFENDANT—INSTRUCTIONS. An instruction as to false representations to the bank "or anyone" is not erroneous when read in connection with others following it, where the central idea, repeatedly impressed upon the jury, made it clear that they were to consider only representations made to the bank.

SAME. An instruction as to "any statement made by the defendant" about the certificate after the making of certain false pretenses, is not objectionable as an assumption by the court that such a statement was made by the defendant.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered February 18, 1903, after a trial and conviction of the crime of attempting to obtain money by false pretenses. Affirmed.

*Sullivan, Nuzum & Nuzum,* and *Robertson, Miller & Rosenhaupt,* for appellant. An information signed by a deputy is insufficient. *Jackson v. State,* 4 Kan. 127. The information is fatally defective in failing to show the name of the person intended to be defrauded. *Owens v. State,* 83 Wis. 496, 53 N. W. 736; *State v. Terry,* 109 Mo. 601, 19 S. W. 206. There was no evidence that defendant demanded payment of the certificate. *Paulson v. State* (Wis.), 94 N. W. 771. The court erred in assuming as a fact in its instructions to the jury, that the defendant had made certain statements in relation to the matter. *Henry v. State,* 64 Ark. 662, 43 S. W. 499; *Jones v. State,* 59 Ark. 417, 27 S. W. 601; *People v. Matthai,* 135 Cal. 442, 67 Pac. 694; *Thompson v. State,* 30 Ala. 28.

*Horace Kimball* and *Miles Poindexter,* for respondent. To the point that an information signed by the deputy is

sufficient, counsel cited: *Taylor v. State,* 113 Ind. 471, 16 N. E. 183; *Territory v. Harding,* 6 Mont. 323, 12 Pac. 750; *Williams v. People,* 26 Colo. 272, 57 Pac. 701; *State v. Devine,* 6 Wash. 587, 34 Pac. 154.

HADLEY, J.—The information in this case charges that appellant fraudulently and with felonious intent attempted to defraud one Gower by means of certain false pretenses. After a trial the jury returned a verdict of guilty as charged, and the court entered judgment that appellant shall be confined in the jail of Spokane county for the period of one year, and shall pay the costs of the prosecution. This appeal is from said judgment.

It is first assigned as error that the court overruled appellant's objection to the introduction of any evidence, upon the ground of insufficiency of the information, and particularly because the information was not signed by the prosecuting attorney. It was signed "Miles Poindexter, Deputy Prosecuting Attorney." The objection made in the court below was general, and did not specify said reason in particular. Respondent therefore contends that the point was waived and cannot be raised here. Appellant contends, however, that the point raised is jurisdictional, and, inasmuch as it is urged upon that ground, we shall discuss it.

§ 6832, Bal. Code, provides as follows:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant; he shall subscribe his name thereto. . . ."

Upon authority of the above statute appellant insists that, unless the prosecuting attorney's name is signed to an information, the court is without jurisdiction. An unquali-

fied reading of the words of the statute, "he shall subscribe his name thereto," would make it necessary for the prosecuting attorney himself to subscribe his own name to all informations. But this court held in *Hammond v. State,* 3 Wash. 171, 28 Pac. 334, that a deputy prosecuting attorney has power to subscribe his principal's name to an information. That holding was based upon § 2142 of the Code of 1881, which provided that deputy prosecuting attorneys should "have the same power in all respects as their principals." The legislature of 1891 enacted a statute upon the same subject which is found in § 4756, Bal. Code. The same words with relation to the power of deputies were retained in the new statute. § 6832, *supra,* was passed by the legislature of 1890, and if any doubt existed after that time as to whether the later statute by implication modified the provision of the Code of 1881 above cited in reference to powers of deputies, no such doubt existed after the passage of § 4756, *supra,* in 1891. The two sections must be read together, and the later statute unqualifiedly grants to deputy prosecuting attorneys as great powers as are granted to their principal. Such power without doubt authorizes them to sign their own names to informations, as was done in this case. The respondent's counsel have discussed this subject extensively in their brief, and have cited many authorities in support of this information as signed. We do not deem it necessary, however, to discuss them, since our statute seems plainly to determine the question. The court therefore did not err in overruling the objection to the introduction of any evidence by reason of the information not being signed by the prosecuting attorney.

It is further urged under this objection that the charging part of the information does not state facts sufficient to

consitute a crime. With the formal parts omitted, the information is as follows:

"The said J. D. Riddell, in the county of Spokane, state of Washington, on the 10th day of November, 1902, did wilfully, unlawfully, fraudulently, and feloniously, with intent to defraud one H. E. Gower, attempt to obtain from the Traders National Bank, a corporation organized and existing under the laws of the United States, doing business in Spokane, certain money, bank notes, and currency of the United States, to wit, the sum of three thousand ($3,000.00) dollars, of the value of three thousand ($3,-000.00) dollars, the property of said bank, designedly and by color of ·certain false pretenses which the said J. D. Riddell then and there wilfully, unlawfully, fraudulently, and feloniously made to the said bank, the said pretenses being as follows, to wit, that he, the said J. D. Riddell, was then and there the bona fide purchaser for value and the owner of a certain certificate of deposit in writing which had theretofore been executed, made and issued by the said bank to and in favor of the said H. E. Gower, for the sum of three thousand ($3,000.00) dollars, being numbered 10,001, dated Spokane, October 15th, 1902, and endorsed by H. E. Gower, the said pretenses then and there being false, and the said J. D. Riddell then and there knowing the same to be false."

We think the information charges a crime. It clearly charges an attempt, by falsely pretending ownership of a certificate of deposit, to obtain money from the Traders National Bank, and that appellant feloniously intended thereby to defraud one Gower. It is also alleged that the certificate had been issued by the bank to Gower, and had been indorsed by him. It thus appeared upon the face of the information that appellant pretended to the bank that he was a bona fide purchaser for value of this indorsed certificate, and thereby attempted to obtain from the bank $3,000 in money, the amount represented by the certificate. It is alleged that the pretense was false, and that appellant

knew it was false. If he had succeeded in procuring the money from the bank on a certificate regularly indorsed by the payee, it would have been to the fraud of Gower, as alleged in the information. By the payment of the money the bank would have discharged its debt to Gower, represented by the certificate, and although it is alleged that appellant attempted to obtain money the property of the bank, yet, in the manner he sought to obtain the bank's property, it would have resulted in the fraud of Gower, since the latter could not have obtained the money from the bank after it had once been paid out upon a certificate regularly indorsed by him.

If appellant had succeeded in obtaining the money in the manner attempted, he would have brought himself within the terms of § 7165, Bal. Code, which provides that, "If any person with intent to defraud another shall designedly, by color of any false token or writing or any false pretense, obtain from any person any money, . . . such person shall upon conviction thereof," etc. The allegation of the information shows an "intent to defraud another" by obtaining money from the bank through the means of a false pretense. The mere fact that the attempt was not successsful did not eliminate from the act the element of crime, under the provisions of § 7437, Bal. Code, which contains the following:

"Every person who attempts to commit any crime but fails or is prevented or intercepted in the perpetration thereof, is punishable, when no provision is made by law for the punishment of such attempt, . . ."

Following the above quotation the different crimes are classified by reference to the degree of punishment fixed for them, and punishment is then fixed for the attempt to commit the crimes, the same being in each instance less severe than in the case of the completed crime. If the in-

formation properly charges an attempt to commit a crime, it therefore charges a punishable offense under the statute cited.

It is urged, however, that it is not averred that appellant was in possession of the certificate of deposit, and that the false pretenses are not charged to have been made while it was in his possession, or when he was attempting to cash it. We think the allegation that the false pretenses were made in an effort to procure the payment of the $3,000 represented by the certificate sufficiently shows that they were made when he was attempting to cash it. The mere fact that it is not alleged in so many words that he was in actual possession of the certificate at the time, we think, is not material, since it is alleged that he falsely pretended that he was the owner and its bona fide purchaser for value, and that by means of such false pretense he sought to obtain the money. It being alleged that he claimed to be the bona fide purchaser and owner, the law implies that he at least controlled the certificate, which fact is inseparable from that of actual possession as far as it relates to the effort to procure the money represented by it. We believe the court did not err in overruling the objection to the introduction of any evidence.

It is next urged that the court erred in refusing to sustain appellant's challenge to the sufficiency of the evidence, and in overruling his motion to direct a verdict of not guilty, made at the conclusion of the state's evidence. It is contended that the evidence had not shown any demand by appellant for the payment of the certificate. The evidence tended to show, that Gower was the owner of the certificate which had been issued by the bank as an evidence of the $3,000 deposited by him; that early in the morning, while waiting for a train at the railroad station, he was

unsuspectingly beguiled away from there by another, who, under the guise of friendship and the usual pretense of being acquainted with people at Gower's former home—a circumstance ordinarily accompanying a well regulated bunco game—induced him to go to a room some distance from the station. Upon entering the room they found two other men playing at a game of cards. Soon afterwards Gower's pretended friend expressed a desire to enter the game, and asked Gower to loan him some money, saying he would return it as soon as the game was over, as they were only playing for fun. Gower handed him sums of cash from time to time until the amount aggregated about $200. Afterwards, as a further temporary advancement in this game for fun only ( ?), he indorsed his $3,000 certificate of deposit and handed it over, expecting it to be returned at the end of the game. When it was handed over, one of the other men seized it and left the room. Soon afterwards, and before the opening of the bank for business on that morning, Gower and his wife went to the bank and directed that payment of the certificate be stopped.

The appellant was not present during any of the foregoing performances, and was then unknown to Gower, but almost immediately after the bank doors were opened he appeared at the paying teller's desk and presented this certificate of deposit containing Gower's indorsement. The paying teller, having been so instructed by the cashier, took the certificate and wrote upon it, "Payment stopped." The teller referred appellant to the cashier, and he at once sought the latter, to whom he showed the certificate containing both his own and Gower's indorsement. He stated to the cashier that he had advanced money upon the certificate, or had bought it—the witness not accurately remembering which.

We think this evidence of the presentation of the certificate by appellant at the paying teller's window, with the payee's indorsement thereon, unaccompanied with any explanation or words of request concerning it, together with the conversation had with the cashier immediately thereafter, in which appellant insisted that he was the bona fide holder by reason of purchase or advancement, amounted to a demand for payment, as such conduct is ordinarily understood in the usual course of business. The evidence of the state also tended to show that Gower was the owner of the certificate, and that it had passed from his immediate possession in the manner above stated. It was also in evidence that, four days after appellant presented the certificate at the bank, he signed a written statement by which he disclaimed any interest of any kind or character in the certificate of deposit. This written statement was pertinent for the jury to consider as bearing upon the alleged falsity of the representations made at the bank, and upon appellant's intention at the time he presented the certificate, and when he told the cashier he was the holder by virtue of purchase or advancement. Witnesses also testified that appellant stated, after the occurrence at the bank, that he paid $2,500 for the certificate, and there was also testimony as to certain contradictory statements made by him concerning the description of the man from when he said he obtained the certificate. This testimony, also, bore upon the questions of false representations, fraudulent intent, and guilty knowledge. We think the evidence was sufficient for the jury, and that the court did not err in refusing to sustain appellant's challenge thereto, or in overruling the motion to direct a verdict of not guilty.

Error is urged as to the competency of certain evidence

introduced by the state, notably the recounting of the occurrences at the depot and at the card room, when appellant was not present. The purpose of that evidence was to show that the title to the certificate had not passed from Gower, and that he was still the owner. It was not sought to show that appellant was connected with the bunco performance itself, and that was not an issue. The fact that Gower was unlawfully deprived of the possession of the certificate was an independent element in the case, which it was necessary to prove as well as his ownership. Appellant's guilty knowledge and fraudulent intent were distinct elements to be shown by other evidence. However, the short time which elapsed after the occurrence at the card room and the appearance of appellant at the bank with the certificate, we think was a circumstance which could properly be considered by the jury.

Error is alleged upon the following instruction:

"The material allegations in the information are, first, that the defendant in this case, for the purpose of obtaining money upon this certificate of deposit or of defrauding the owner thereof out of the money, represented to the bank, or any one, or remarked to the officials of the bank, that he was a bona fide purchaser for value, and the owner of the certificate of deposit."

The objection urged to the instruction is that the words, "represented to the bank or any one" that appellant was the purchaser and owner, were used. It is contended that, as the evidence had disclosed that he made such representations to others after the appearance at the bank, the instruction may have tended to prejudice the jury, and may have led them to find appellant guilty upon representations made to persons not connected with the bank. The instruction must be read in connection with others following it, and we think it was made clear to the jury that they could

consider only representations made to the bank or its officials. That was the central idea repeatedly impressed upon the jury by subsequent instructions, and we do not think the somewhat inapt words of the single instruction misled the jury from the main thought couched in the charge as a whole.

It is insisted that in one instruction the court assumed certain facts to exist, viz., that appellant made certain statements about the certificate of deposit after he left the bank. The instruction was to the effect that such statements could not be considered as false pretenses for the purpose of defrauding Gower. The instruction was in the interest of appellant. Testimony of such statements was before the jury undisputed, and while even under those conditions the court should not have assumed and stated any fact as proven, yet we do not think the instruction did so. It merely stated the abstract proposition, "any statement made by the defendant," but did not say that such statement had in fact been made. Since there was evidence upon the subject, the instruction had no further effect than to call attention to the subject without saying what the evidence proved.

Other errors assigned upon instructions given, and upon the refusal to give requested instructions, we do not think it necessary to discuss. The charge of the court fairly and fully stated the law within our views of the case as heretofore outlined.

Finding no prejudicial error, the judgment is affirmed.

FULLERTON, C. J., and ANDERS, DUNBAR, and MOUNT, JJ., concur.