17 P.(2d) 951

In re TRUDER et al.

No. 3850.

Supreme Court of New Mexico.

Oct. 13, 1932.

E. R. Wright, of Santa Fé, and C. W. G. Ward, of East Las Vegas, for respondents.

E. K. Neumann, Atty. Gen., amicus curiæ.

## PER CURIAM.

Charges of professional misconduct have been here filed against Thomas V. Truder, district attorney of the Fourth judicial district, and Frank Faircloth, his assistant. The charges have been considered, and the respondents heard in their defense. Judgment is now to be rendered.

The substance of the first charge, involving both respondents, is that, having instituted a voluntary manslaughter prosecution against one Lindsley, growing out of an automobile accident, they accepted employment from the administrator of the deceased and instituted a civil damage action against said Lindsley upon the same facts, and that, as an inducement to a settlement in damages, they offered to dismiss the criminal prosecution.

The substance of the second charge, which involves respondent Truder alone, is that, having instituted a criminal proceeding against one Sulier, he dismissed the same in consideration and upon the condition that said Sulier execute a written release of all claims for damages as against respondent Truder growing out of such prosecution.

Respondents admitted by their answer, and it is an unquestioned fact, that they were pursuing said Lindsley both officially for a criminal offense and in their capacity as private attorneys for civil damages. This fact is not made the basis of the charge of misconduct. Under the theory of the charge, misconduct consists, not in having put themselves in the double position stated, but in that, being so situated, they offered to dismiss the criminal prosecution if there should be a settlement of the civil suit.

Under such theory, the evidence seems to be sufficient as to respondent Faircloth, and insufficient as to respondent Truder. In view

of our conclusions, further reference to the facts in dispute will be unnecessary.

It appears from statements by all counsel in the case that it is not unusual practice in this state for district attorneys to engage, as respondents admittedly did here, to prosecute a civil action upon the same facts constituting a criminal action, which they are then prosecuting, or may be called upon to prosecute; that no statute prohibits this practice; that, as generally viewed, such double employment, standing alone, while not entirely approved, has not been deemed such misconduct as could lead to disciplinary measures; that, to make a case for disciplinary action, some actual conduct must be shown in addition, violative of the public or private duty of the attorney. We cannot accede to this view, and, if the practice is so widespread as stated, we feel it our imperative duty to condemn it at this first opportunity.

The incompatibility of public duty and private interest and employment is too plainly illustrated in this case to require discussion. It scarcely aggravates the case to show that one of the respondents actually uttered the suggestion which is implied in the situation itself, that a payment of damages would moderate the vigor or good faith, if not entirely end, the prosecution.

Attorneys are officers of the courts. It is the inherent duty of any court to hold its officers to their duty. The Legislature has not forbidden district attorneys to continue in civil practice. The fact does not affect the case. That is not to deny, it is to assume, the duty of the courts to supervise such civil practice and limit it, to prevent such situations as this, the reproach of which must fall upon the courts themselves and upon the administration of justice. If, for lack of a statute, we should hesitate to stop, or to punish when necessary, such violations of the high standards and the ethics of the legal profession, we should exhibit lack of comprehension of our inherent power and of our highest duty; we should invite legislative aid and interference where such are not required, and may do harm. A court exists for the purpose of doing justice. It cannot perform that function if its ministers are so compromised that they cannot be relied upon to perform their parts with an eye single to the interests they at the time represent. ·

These principles are so plain to our minds that it would in a sense detract from their inherent force to seek to bolster them up by authorities easily to be cited.

So we find here a case of serious misconduct, upon admitted facts. It does not greatly matter that it is not independently relied upon by the charge as formulated. It is our duty to take notice of it. If, as we doubt, technical rights of respondent Truder entitle him to a new charge and another hearing, we assume that he will waive such rights.

 The second charge also is serious. The evidence does not satisfy us, however, that respondent Truder, in dismissing the criminal case, was induced thereto by the release of any claim of liability in damages for the prosecution, nor that he intended to exact

such release as the price or condition of such dismissal. So we do not sustain the charge as laid.

But the admitted fact remains that, substantially coincident with the dismissal, respondent Truder and said Sulier did execute a reciprocal release of claims, expressly including such as might exist on account of the prosecution of the latter by the former. We must condemn this, though we do not find present the intent necessary to sustain the charge as laid. The intent could be known to few; the act by all. The act could not but bring into disrepute the administration of justice. The courts must require of attorneys a higher standard of care to avoid this than respondent Truder observed in this matter.

Mingled with regret in the performance of a painful duty, we have gratification in the prompt performance by the grievance committee of the bar of its equally unpleasant duty. We find it proper also to commend both the Attorney General and the counsel for the respondents for their frankness and fairness in putting the matter before us.

Punishment is not the only purpose, we do not deem it the main purpose, of this proceeding. Our ends do not require severity in this first case. We do not find it necessary to make nice distinction, where there is so little real difference, in the conduct of the respondents. It is impressed upon us that the practice we here first condemn is not uncommon. Severity to respondents would suggest that others perhaps equally guilty be sought out and punished. All the good that might thus be accomplished we believe will result from the present admonition. Example is not needed.

Waiving distinction, then, between the misconduct of respondent Faircloth, as laid and established, and the two instances of misconduct of respondent Truder, as disclosed by the case and admitted, it is the judgment of the court that they should be, and they are each hereby, severely reprimanded.

BICKLEY, C. J., and WATSON, SADLER, and HUDSPETH, JJ., concur.