The STATE of Iowa, Appellee,

v.

Arthur Lee WILLIAMS, Jr., Appellant.

No. 55771.

Supreme Court of Iowa.

April 24, 1974.

James C. Dunbar, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Darby Maria Coriden, Asst. Atty. Gen., and David Dutton, Co. Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON, and HARRIS, JJ.

HARRIS, Justice.

Defendant appeals his conviction of first degree murder, assigning three errors. First, he complains of the trial court's refusal to prohibit a deputy sheriff from wearing side arms in the presence of the jury. He next complains because the trial court resolved in his favor a dispute which developed during trial between defendant and his lawyer over attendance of additional defense counsel. Finally he protests a denial of his motion for mistrial on the claim the county attorney had a conflict of interest. We affirm.

■ I. The jury had been selected when defendant's counsel directed the court's attention to the fact an armed deputy sheriff was present in the courtroom. It was counsel's observation the officer was "attending" the accused. Prejudice was alleged on the claim the sight of the officer's side arms "carries with it the suggestion of other suspected flight or danger or violence on the part of the defendant."

The trial court responded by overruling the motion but directed the officer to sit in the courtroom in a place out of view of the jury. It was not shown the officer was thereafter observed by the jurors. Because no further objection was urged it is highly doubtful any error was preserved.

On the other hand we reject defendant's first assignment because it improperly states the law. Defendant was charged with two murders.

"Courts are entitled to take all reasonably necessary precautions for the maintenance of order during the progress of the trial and for the detention and custody of the accused. * * *.

" * * *

"There is no impropriety in having an armed guard keep watch over a defendant on trial for murder in the first degree where the evidence shows that he is a dangerous and desperate character. And the fact that the accused is in the custody of an officer wearing a sidearm visible to the jury is not grounds for reversal in the absence of facts pointing more directly to probable prejudice. The same is true where there are a number of visibly armed officers, at least where the officers are there to handle a large crowd, not solely to guard the defendant, and where the arms are of a kind usually worn by police officers at trials and no undue display of them is made." 21 Am.Jur.2d, Criminal Law, section 240, pages 276 and 278.

In two cases we held a defendant's right to a fair trial was not violated by being handcuffed during trial. See State v. Brewer, 218 Iowa 1287, 254 N.W. 834 and State v. Evans, 169 N.W.2d 200 (Iowa 1969).

There is considerably less ground to complain of the presence of officers with side arms than of defendants being restrained by handcuffs during a trial. Citizens commonly observe peace officers bearing side arms. We have no reason to suppose a citizen called for jury duty would make any unfair or unwarranted deductions by reason of the side arms. There is no merit in defendant's first assignment.

■ II. Defendant's second complaint can only be described as astounding. While the trial was in progress defendant's family arranged for additional counsel to aid in the defense. Defendant joined in a request additional counsel be allowed to appear and assist in the defense. The request was vigorously resisted, not by the county attorney, but by defendant's original counsel. At a hearing held outside the presence of the jury defendant's original counsel indicated he could not accept additional counsel. He did not think additional counsel was beneficial to the defense at the advanced stage of trial. The defendant repeated his desire for the additional counsel.

The trial court resolved the dispute in favor of defendant. In doing so it restricted the activities of the newly appearing attorney to "counseling only," and directed original counsel to interrogate and cross-examine all witnesses. The original counsel thereafter applied for and was denied permission to withdraw.

In his second assignment defendant now argues it was reversible error to inflict upon his attorney, even at his own request, the burden of additional legal assistance.

The assignment is self-answering and wholly without merit.[1]

■ III. Defendant's final assignment is on a narrow issue. The defense called Dr. Colman Burns, a practicing psychiatrist, as a witness. Mrs. Gwennette Reed, whom defendant was accused of murdering, had been a recent patient of Dr. Burns. When the defense sought to inquire of the witness into the knowledge gained by him in his professional capacity it was objected to on grounds of privilege.

No complaint is made in this appeal on the question of whether this evidence was or was not privileged.[2] Rather the assignment is directed to the denial of defendant's motion for mistrial. Defendant urges he was entitled to a mistrial because the claim of privilege was presented to the trial court by the county attorney in his capacity as personal attorney for members of the victim's family.

The county attorney did represent to the court he was personal counsel for members of the victim's family who had authorized him to claim the doctor-patient privilege. Defendant insists this action amounted to a conflict of interest in violation of section 336.5, The Code. That section is as follows:

"No county attorney shall accept any fee or reward from or on behalf of anyone for services rendered in any prosecution or the conduct of any official business, nor shall he, or any member of a firm with which he may be connected, be directly or indirectly engaged as an attorney or otherwise for any party other than the state or county in any action or proceeding pending or arising in his county, based upon substantially the same facts upon which a prosecution or proceeding has been commenced or prosecuted by him in the name of the county or state; nor shall any attorney be allowed to assist the county attorney in any criminal action, where such attorney is interested in any civil action brought or to be commenced, in which a recovery is or may be asked upon the matters and things involved in such criminal prosecution."

The action of the county attorney in representing himself to be personal counsel for members of the victim's family may have been inappropriate in view of section 336.5. But we find no error in the denial of defendant's motion for mistrial. If there was a conflict of interest it does not follow it affected the outcome of the trial.

■ It is well settled trial courts are vested with considerable discretion in determining whether prejudice results from trial misconduct on the part of a prosecutor. State v. Vickroy, 205 N.W.2d 748 (Iowa 1973); State v. Wright, 203 N.W.2d 247 (Iowa 1972); State v. Hephner, 161 N.W.2d 714 (Iowa 1968). We are not inclined to disturb the ruling of the trial court because we find no indication a conflict of interest on the part of the county attorney had any effect on the conduct or outcome of the trial.

Affirmed.

---

1. It is to be noted the trial court's arrangement carefully protected both defendant's right to counsel and the limitation on the number of attorneys who may examine a witness for any party. See State v. Smith, 215 N.W.2d 225 (Iowa 1974).

2. Privilege of communications in professional confidence is governed by section 622.10, The Code. Since defendant does not assign the question of the status of the doctor-patient privilege following the victim's death we do not consider it. See Underhill on Criminal Evidence, section 338, page 858; McCormick on Evidence, Second Ed., section 102, pages 218–219.