377 A.2d 975

**COMMONWEALTH of Pennsylvania**

v.

**Marshall DUNLAP, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1976.

Decided Aug. 17, 1977.

Reargument Denied Oct. 3, 1977.

Alfred V. Papa, William M. Panella, New Castle, for appellant.

Paul W. Johnson, Asst. Dist. Atty., New Castle, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM:

The Court being equally divided, the order of the Superior Court is affirmed.

JONES, former C. J., did not participate in the decision of this case.

ROBERTS, J., filed an opinion in support of reversal in which POMEROY and MANDERINO, JJ., joined.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice:

I dissent. The district attorney who prosecuted this case also represented the victim in a civil suit arising out of the same transaction. The majority affirms appellant's conviction even though there was a conflict of interest because

appellant did not establish actual prejudice. I cannot agree. I believe that where a conflict of interest arises on the part of a district attorney, the existence of such a conflict should invalidate the conviction, even though no actual prejudice has been established. Such a rule is necessary in light of the substantial and sensitive responsibilities and vast discretion which are entrusted to the district attorney.

## I

Appellant was convicted by a jury of assault, assault and battery, aggravated assault and battery, assault with intent to maim, assault with intent to kill, and attempt with intent to kill.

After the jury returned the verdicts, but before argument on post-trial motions, the district attorney disclosed in open court that he represented the victim in civil proceedings arising out of the stabbing which was the basis for the criminal prosecution. Appellant contended that the district attorney had a conflict of interest which denied him a fair trial. The trial court ruled there was no actual conflict between the prosecution of appellant's case and the representation of the victim in the civil suit and denied appellant's motion for a new trial. Appellant was sentenced to two to five years imprisonment on one charge and one and one-half to three years imprisonment on another charge, to run concurrently. The Superior Court affirmed judgment of sentence. *Commonwealth v. Dunlap*, 233 Pa.Super. 38, 335 A.2d 364 (1975) (5–2) (Judge Hoffman filed a dissenting opinion joined by Spaeth, J.).

We granted allocatur and issued a per curiam order remanding the case to the trial court for a hearing to determine whether appellant suffered actual prejudice as a result of the district attorney's dual representation.[1] This Court retained jurisdiction pending the remand.

1. The per curiam order remanding this case for a hearing to determine whether appellant suffered actual prejudice does not establish that a defendant must prove actual prejudice in order to obtain relief after a prosecutor's conflict of interest comes to light. Rather, the

On remand, the trial court made the following findings. The district attorney was assigned to this case on February 7, 1973, and had exclusive control over the prosecution. His representation of the victim began on August 29, 1973, when the victim's counsel in Pittsburgh referred the civil case to the district attorney. The civil action involved the same evidence, the same witnesses and many of the same legal and factual issues. The district attorney decided not to name appellant as a defendant in the civil action because he concluded that a judgment against appellant would be worthless. Instead, he decided to sue the owner of the bar where the stabbing took place. The district attorney did not disclose to the prosecution witnesses that he represented the victim in the civil action. On August 28, 1974, the district attorney voluntarily withdrew from the civil case.

The trial court concluded that the district attorney's dual representation did not result in an actual conflict of interest "in the sense that his obligation to the Commonwealth in the criminal prosecution was in any manner inconsistent with his obligation to the victim in the civil prosecution. Nor was his obligation to the victim in the civil action actually inconsistent in any respect with his obligations to the Commonwealth in the criminal prosecution of the appellant." It appears that the trial court concluded that appellant suffered no actual prejudice as a result of the district attorney's dual representation. A conclusion that there was no conflict of interest would clearly be erroneous. A district attorney's professional responsibility is to seek justice—to protect the innocent as well as to convict the guilty. A private attorney, however, has an obligation to zealously represent his client and to seek to resolve all questions in favor of his client. Because the professional responsibilities of a district attorney and a private attorney differ, anytime a district attorney represents the victim in a civil suit at the same

remand permitted development of the record thereby aiding this Court in deciding the merits of appellant's claim. Moreover, if actual prejudice had been established, it would have been unnecessary to determine whether the mere existence of a conflict should invalidate appellant's conviction.

time that he is prosecuting the defendant, a conflict of interest exists.

## II

Appellant contends that he is entitled to a new trial even though he did not establish actual prejudice. He asserts that the potential for abuse from a district attorney's conflict of interest is so great that a prophylactic rule is necessary. I agree.

This Court has long recognized that:

"Prosecutors . . . are public officials entrusted with substantial and sensitive responsibilities. They are required to act in the public interest, which includes protecting the rights of the accused. Society rightfully expects that they maintain professional competence in the exercise of their functions. . . ."

*Commonwealth v. Bolden*, 472 Pa. 602, 641, 373 A.2d 90, 109 (1977) (plurality opinion); accord, *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975); American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, The Prosecution Function § 1.1 (Approved Draft, 1971); Pennsylvania Supreme Court Code of Professional Responsibility EC 7–13 (1974).

"[T]ime and again, this Court has stated that the district attorney is a quasi-judicial officer . . . . [T]he office of District Attorney is part and parcel of the judicial system and performs an important function in the administration of justice. Moreover, in the performance of his duties, the law grants to the district attorney wide discretion in the exercise of which he acts in a judicial capacity." (citations omitted).

*Commonwealth ex rel. Specter v. Martin*, 426 Pa. 102, 114, 232 A.2d 729, 736 (1967) (opinion announcing the judgment of the court).

The American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, The Prosecution Function § 1.2 (Approved Draft, 1971) provide:

"A prosecutor should avoid the appearance or reality of a conflict with respect to his official duties."

See generally Pennsylvania Supreme Court Code of Professional Responsibility EC 5–1, EC 5–2 (1974).

The important power and vast discretion vested in the district attorney mandate that where a conflict of interest exists, the proceedings should be invalidated. In our society, the district attorney has virtually unfettered discretion to determine which cases to pursue and what crimes to charge. In order to ensure that this power is properly exercised, the district attorney must be held to the highest ethical standards which include avoiding even the appearance of a conflict of interest.[2] In his dissenting opinion in this case, Judge Hoffman noted:

"By its very nature, [the] discretion [vested in the prosecutor] is a subjective exercise; seldom is the motive for decision on record. . . . Our society can tolerate a system that allows such an accretion of power despite the limited ability to review the decisionmaking process because we charge the district attorney . . . with a high ethical standard. That standard—the exercise of his

2. "[T]he exercise of [discretionary] power by the prosecuting officer—the decision to prosecute or not to prosecute . . .—involves the performance of one of the most difficult and delicate functions of his office. It requires the weighing and balancing of interest that may, and often do, conflict—those of the public and those of the victim . . . . One thing is certain. The prosecuting officer cannot perform this function—he cannot discharge his public obligation—if his personal interests are involved. And his representation of the [victim] at once gives him a personal interest in the matter that disables him from the proper performance of his official duty."

*In re Ridgely,* 48 Del. 464, 471, 106 A.2d 527, 531 (1954) (disciplinary proceedings). See generally, American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function, The Prosecution Function § 1.2 (Approved Draft, 1971); Pennsylvania Supreme Court Code of Professional Responsibility.

'judicial capacity'—is breached not only by actual conflict of interest, but also by actions which have the *appearance* of conflict of interest."

*Commonwealth v. Dunlap*, 233 Pa.Super. 38, 46, 335 A.2d 364, 368 (1975) (dissenting opinion of Hoffman, J., joined by Spaeth, J.).[3] (Emphasis in original)

Moreover, the district attorney's representation of the victim in a civil suit at the same time that he is prosecuting the defendant, presents a danger that the district attorney may utilize the resources of his office for his private interests. The district attorney properly has only the master—the people of the Commonwealth. His duty is to seek justice—and to protect the innocent as well as to convict the guilty. In addition, when a district attorney represents the victim while prosecuting the defendant, he may be influenced by the private interest which he and his client share in the case. Yet, it is almost impossible to establish actual prejudice because of the vast discretion which we entrust to the prosecutor. As Judge Hoffman observed:

"Hence, in the instant case, neither this Court nor the appellant can know how or if the district attorney's decision to prosecute was influenced by his representation of the victim in a civil suit. The situation is too ripe, however, with potential abuse: an attorney would be

**3.** Accord, *People v. The Superior Court of Contra Costa County*, 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977) (citations omitted) (footnotes omitted):

"The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted. . . . In all his activities, his duties are conditioned by the fact that he 'is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' [quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)]

Thus not only is a judicial requirement of prosecutorial impartiality reconcilable with executive discretion in criminal cases, it is precisely because the prosecutor enjoys such broad discretion that the public he serves and those he accuses may justifiably demand that he perform his functions with the highest degree of integrity and impartiality, and with the appearance thereof."

hard-pressed to abandon prosecution of a defendant when a criminal conviction would be proof of the alleged tort in the civil suit; the attorney would be free to use public resources to rout out additional evidence against the criminal defendant, a pursuit based not necessarily on the prosecutor's view of the social importance of the case, but solely on the private interest which he and his client have in the case. A defendant does not have a right not to be prosecuted; he does, however, have a right to have his case reviewed by an administrator of justice with his mind on the public purpose, not by an advocate whose judgment may be blurred by subjective reasons."

*Commonwealth v. Dunlap*, 233 Pa.Super. at 46, 335 A.2d at 368. Dual representation may also undermine the legitimacy of the district attorney's office in the eyes of the public:

"To permit a prosecuting attorney to have an interest of any nature whatsoever in any civil proceedings, directly or indirectly, and which proceedings involve similar facts or the same subject matter as a criminal prosecution then pending or thereafter initiated, can only give rise to suspicion concerning and relating to the motives of the prosecuting attorney involved and bring such office into disrepute with the public."

*State v. Detroit Motors*, 62 N.J.Super. 386, 393, 163 A.2d 227, 229–31 (1960).[4]

Other jurisdictions have concluded that it is fundamentally unfair to permit a district attorney to prosecute a case where he has a personal interest which prevents the district attorney from serving his only permissible master—the pub-

---

**4.** Accord, *People v. The Superior Court of Contra Costa County*, 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977):
   "Society also has an interest in both the reality and the appearance of impartiality by its prosecuting officials: 'It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the appearance of impropriety.' (*People v. Rhodes* (1974) 12 Cal.3d 180, 185, 115 Cal.Rptr. 235, 239, 524 P.2d 363, 367)." (footnote omitted).

lic.[5] Thus, convictions have been invalidated even where no actual prejudice has been established.[6]

5. District attorneys have been disciplined for representing the victim while prosecuting the defendant. See e. g., *People v. ___*, 162 Colo. 174, 427 P.2d 330 (1967) (per curiam). After noting that the appearance of a conflict of interest was sufficient to justify the charge, the court stated:

> "To you, and to any others in the profession . . . who have labored under this misconception that there is nothing wrong when a district attorney acts as counsel for a litigant in a civil case, and prosecutes a criminal case based upon the facts giving rise to the civil action, we give warning: This court will not countenance or tolerate such conduct. We condemn it."

Id. at 177, 427 P.2d at 331.

Many states have, by statute, restricted the private practice of a prosecuting attorney. See e. g., *State v. Basham*, 84 S.D. 250, 170 N.W.2d 238 (1969); *State v. Detroit Motors*, 62 N.J.Super. 386, 163 A.2d 227 (1963); *Callahan v. Jones*, 200 Wash. 241, 93 P.2d 326 (1939); 27 C.J.S. District & Prosecuting Attorneys § 12(9) at 668; Annot., 82 A.L.R.2d 774. Pennsylvania has no such statute. However, even in the absence of statute, certain restrictions may be imposed due to the nature of the office of district attorney.

> "A prosecuting attorney may engage in private practice where not prohibited by statute, but should not take a private position antagonistic to that of, or conflicting with, his public duty."

27 C.J.S. District & Prosecuting Attorneys § 12(9) at 668.

In *In re Truder*, 37 N.M. 69, 17 P.2d 951 (1932), the court disciplined a district attorney who accepted employment to prosecute a civil suit for damages based upon the same occurrence as a criminal case he was prosecuting absent a statute prohibiting such conduct. The court noted:

> "Attorneys are officers of the courts. It is the inherent duty of the court to hold its officers to their duty. The Legislature has not forbidden district attorneys to continue in civil practice. The fact does not affect the case. That is not to deny, it is to assume, the duty of the courts to supervise such civil practice and limit it, to prevent such situations as this . . . . If, for lack of a statute, we should hesitate to stop . . . such violations of the high standard and ethics of the legal profession, we should exhibit lack of comprehension of our inherent power and of our highest duty . . . . . ."

Id. at 70, 17 P.2d at 952. See *Hosford v. Eno*, 41 S.D. 65, 168 N.W. 764 (1918).

6. Some jurisdictions require a defendant to establish actual prejudice before he is entitled to a new trial. See e. g., *State v. Williams*, Iowa, 217 N.W.2d 573 (1974); *People v. Farnsley*, 53 Ill.2d 537, 293 N.E.2d 600 (1973); *Garton v. State*, Mo., 454 S.W.2d 522 (1970); *Brooks v. State*, 45 Ala.App. 196, 228 So.2d 24 (1969). I am convinced, however, that the better rule is expressed by the Maryland Court of Appeals which has held that actual prejudice will be presumed as a matter of law. *Sinclair v. State*, 278 Md. 243, 363 A.2d 468 (1976).

In *Ganger v. Peyton*, 379 F.2d 709 (4th Cir. 1967), the Court of Appeals for the Fourth Circuit held that a state conviction was "unconstitutionally invalid" where the prosecuting attorney also represented the defendant's wife in a divorce proceeding which was pending at the time of the criminal trial and was based upon the same alleged assault on the defendant's wife. The court observed:

"Although conceding that the prosecuting attorney should not have represented [the defendant's] wife in private litigation at a time when he was charged with the duty to fairly prosecute or otherwise fairly dispose of the criminal charge against [the defendant], the State contends that the improper conduct resulted in no harm to [the defendant]. We cannot so assume. It is true that although charged with a serious assault that could have resulted in imprisonment to the extent of twenty years, [the defendant] was convicted of a lesser assault and sentenced to only six months. But we do not know and cannot now ascertain what would have happened if the prosecuting attorney had been free to exercise the fair discretion which he owed to all persons charged with crime in his court. . . .

We think the conduct of this prosecuting attorney in attempting at once to serve two masters, the people of the Commonwealth and the wife of [the defendant] violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment." (citations omitted) (footnotes omitted)

Id. at 714.

The court noted that there is always the prospect of plea bargaining and a conflict of interest might well deny a defendant the exercise of fair-minded discretion on the part of the prosecutor. "Because of the prosecuting attorney's own self-interest in the one litigation . . . he was not in a position to exercise fair-minded judgment with respect to (1) whether to decline to prosecute; (2) whether to reduce the charge to a lesser degree of assault; or (3) whether to recommend a suspended sentence or other clemency."

Id. at 713.

In *Sinclair v. State*, 278 Md. 243, 363 A.2d 468 (1976), the Maryland Court of Appeals held:

"[I]f a prosecutor has, or would clearly appear to a reasonable person having knowledge of the pertinent facts to have, any pecuniary interest or a significant personal interest in a civil matter which may impair his obligation in a criminal matter to act impartially toward both the State and the accused, then he is, on the basis of this State's public policy, disqualified from initiating or participating in the prosecution of that criminal cause. The corollary to this principle is that if a prosecutor who should have been disqualified is involved in his official capacity in the bringing of the charges . . . against the defendant, then upon timely objection the charges will be dismissed, or if such a prosecutor participates in his official capacity in the prosecution of the case, then upon timely objection any resulting conviction will be reversed and a new trial ordered."

Id. at 254, 363 A.2d at 475. The court refused to require that a defendant establish actual prejudice before a district attorney's conflict of interest would invalidate a conviction. The court held that "on the basis of public policy [actual prejudice] will be presumed to exist as a matter of law." Id. at 255 n.8, 363 A.2d at 475 n.8.

Thus, in light of the difficulty of ascertaining whether the district attorney failed to act impartially, as well as the potential abuses and negative social impact which may flow from a district attorney's conflict of interest, I believe that such a conflict should invalidate a conviction even though a defendant does not establish actual prejudice.

Finally, I find it difficult to reconcile the majority's affirmance of appellant's conviction with *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A.2d 641 (1962). In *Whitling*, Justice (later Chief Justice) Jones, writing for a unanimous court, held that where a defense attorney repre-

sents two criminal defendants in proceedings involving the same criminal episode, the defendant need not establish actual prejudice. Justice Jones wrote:

"Despite its recognition of the existence of a conflict of interest . . . the Superior Court stated that it was appellant's burden to show 'that the conflict of interest resulted in such ineffective and improper representation as to result in basic and fundamental error' and, in the instant situation, appellant had not sustained this burden. With that conclusion we cannot agree.

If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a conflict vitiates proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than such harm *did* result, furnishes the appropriate criterion. As pointed out by Judge MONTGOMERY in his dissenting opinion, the Superior Court in *Pile v. Thompson*, 62 Pa.Super.Ct. 400 . . . ' . . . the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it.' "

Id. 406 Pa. at 48, 176 A.2d at 643. (emphasis in *Whitling*)

Like the situation in *Whitling*, it is the potentiality of harm rather than the occurrence of actual harm which should furnish the appropriate criterion where the district attorney has a conflict of interest.

I would reverse judgment of sentence and grant appellant a new trial.

POMEROY and MANDERINO, JJ., join in this opinion.